```
            THE UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF TEXAS
                  MCALLEN DIVISION

                    * * * * *

UNITED STATES OF AMERICA    *   NO. M-19-CR-2341
                            *   McAllen, Texas
VS.                         *
                            *   10:19 a.m.- 10:35 a.m.
BRENDA ALICIA FUENTES       *   September 10, 2020

                    * * * * *

                 SENTENCING HEARING

                (By Videoconference)

       BEFORE THE HONORABLE MICAELA ALVAREZ
            UNITED STATES DISTRICT JUDGE

                    * * * * *
```

Proceedings recorded by electronic sound recording
Transcript produced by transcription service

*GLR TRANSCRIBERS*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1610

**APPEARANCES:**

For the United States:

    MS. AMY GREENBAUM
    **U.S. Attorney's Office**
    1701 W. Business Hwy. 83, Suite 600
    McAllen, TX 78501

For the Defendant:

    MR. RUDY MORENO
    **Law Office of Rudy Moreno**
    5526 North 10th Street
    McAllen, TX 78505

U.S. Probation Officer:

    JIM FLETCHER
    REY MORENO

Court Interpreter:

    ELENA MEDRANO *(Present, not needed)*

Court Clerk:

    JULIE SANCHEZ

Electronic Recorder:

    KATHRYN NELSON

```
 1                    P R O C E E D I N G S
 2              10:19 A.M. - SEPTEMBER 10, 2020
 3            THE COURT:  Case No. 19-2341, and this is
 4   Brenda Alicia Fuentes, and she is out on bond.
 5            MS. GREENBAUM:  Amy Greenbaum for the
 6   Government, present and ready.
 7            MR. MORENO:  Good morning, Your Honor.
 8            THE COURT:  Good morning.
 9            MR. MORENO:  Rudy Moreno on behalf of
10   Ms. Fuentes.  She is present and ready for sentencing,
11   Your Honor.
12            THE COURT:  Thank you.
13                 Ms. Fuentes, please raise your right hand
14   to be sworn in.  Do you solemnly swear the testimony
15   you will give in the case now before the Court shall be
16   the truth, the whole truth, and nothing but the truth,
17   so help you God?
18            DEFENDANT FUENTES:  I do.
19            THE COURT:  All right, thank you.  You may put
20   y our hand down.
21                 Let me address something with your
22   attorney first.  Mr. Moreno, did you talk with
23   Ms. Fuentes about her right to be present in person for
24   this proceeding?
25            MR. MORENO:  Yes, Your Honor.
```

```
 1             THE COURT:  And did she understand she has
 2  that right, but agreed to give up that right and appear
 3  by video?
 4             MR. MORENO:  Yes, Your Honor.
 5             THE COURT:  Ms. Fuentes, do you understand
 6  that you do have the right to be present in person for
 7  this hearing?
 8             DEFENDANT FUENTES:  Yes, I do.
 9             THE COURT:  Do you wish to give up that right
10  and appear by video, as you are doing so far?
11             DEFENDANT FUENTES:  Yes.
12             THE COURT:  All right, thank you, then,
13  Ms. Fuentes.
14                  The Court then will continue to
15  sentencing.  You are facing sentencing for a charge of
16  sexual abuse of a ward.  Do you understand that?
17             DEFENDANT FUENTES:  Yes, Your Honor.
18             THE COURT:  Mr. Moreno, did you receive and
19  review the Presentence Investigation Report?
20             MR. MORENO:  I did, Your Honor, and we filed
21  objections to --
22             THE COURT:  We'll come to that in just a
23  moment, okay?  Did you review it with Ms. Fuentes?
24             MR. MORENO:  I did, Your Honor.
25             THE COURT:  Ms. Fuentes, did you review with
```

```
 1  your attorney the Presentence Investigation Report?
 2              DEFENDANT FUENTES:  Yes, Your Honor.
 3              THE COURT:  Okay.  Now let's go ahead and
 4  address the objection because that will make a
 5  difference where we are in the Guidelines.  And I will
 6  actually start with the Government because, Mr. Moreno,
 7  I tend to agree with you on the objection, but I'll
 8  hear from the Government and see if there is anything
 9  else they wish to offer.
10              And to the Government what the Court
11  sees -- and I understand that, you know, we do have
12  some cases where the enhancement has been applied even
13  when it is a situation of somebody in detention and the
14  defendant is an employee, staffer of the jail, or
15  whatever you want to call it.  But I think here what
16  the Court sees is that we don't have any other real
17  facts other than he is a ward, and that is considered
18  within the offense level itself.
19              So is there anything the Government would
20  point to?
21              MS. GREENBAUM:  Well, Your Honor, I would just
22  add that although the defendant -- I'm sorry, although
23  the victim was not physically restrained, he was in
24  official detention under the care, custody, and
25  authority of the defendant.  And as the Court sees on a
```

1  daily basis here, the inmates of the facility do not
2  have free reign of the facility.  They are escorted to
3  and from locations just like they are when they are
4  escorted here to court on an every-day basis.
5              So, off of that, I would just note that
6  the victim could not flee without facing consequences
7  from the defendant.  Although the defendant was
8  assigned to work there in the kitchen while not being
9  restrained, because he's in the kitchen, he couldn't
10 work in the kitchen without being restrained.
11             If he were to flee the kitchen or flee, I
12 mean, that's something that's very serious, that the
13 detention officers and the marshals or anybody that
14 would be present would take that very serious.
15        THE COURT:  And I don't disagree with any of
16 that, but what I'm saying is at least based on the
17 facts that were presented here is that there wasn't
18 nothing beyond the fact that he is a ward and, yes,
19 certainly in official detention under the authority.
20 We don't necessarily a lot more as far as the extent of
21 Ms. Fuentes' authority in the particular situation.  I
22 know she worked in the kitchen.
23             But even if she was in charge, let's say
24 she's in charge of the kitchen and would have the
25 ability to say, "Well, if you don't go along with this,

1  you know, you're not going to work in the kitchen any
2  more."  There's nothing to indicate that there was any
3  other kind of vulnerability here other than the fact
4  that he is a ward here.  And in certain of these cases,
5  you know, I think, you know, the particular
6  circumstances sort of increase the vulnerability.  I
7  think anybody who's in detention, there's some
8  vulnerability there because, you're correct, they're
9  under the control.
10           MS. GREENBAUM:  Correct.  And in this case,
11 Your Honor, it was the defendant who told or directed
12 the victim, "Come with me to move boxes to the back of
13 the kitchen."  And that's what --
14           THE COURT:  I understand.  But even though
15 there doesn't appear to be any kind of coerciveness
16 before that, that made him such that he felt like there
17 was no choice, beyond the fact that he is a ward,
18 again, I recognize that.
19           MS. GREENBAUM:  Yes, Your Honor.
20           THE COURT:  But with nothing more than what I
21 have in the report, the Court does believe that the
22 objection should be sustained, to not add those two
23 points for vulnerability here.
24           So, Ms. Fuentes, then the Guideline range
25 becomes 10 to 16 months.  Do you understand that?

1          DEFENDANT FUENTES:  Yes, ma'am.
2          THE COURT:  All right, thank you.
3               All right, Mr. Moreno, is there anything
4  else that you wish to say in your client's behalf?
5          MR. MORENO:  Your Honor, just in regards to
6  sentencing, Your Honor, ***, we're going to be asking
7  for a split sentence, Your Honor.
8               Your Honor, just to this ***, this is a
9  woman who had been married to one person for 20-plus
10 year, had a family, went through a divorce, or I guess
11 separation, Your Honor.  And it was around that time, a
12 low point, where she became a companion with this
13 individual.  You know, aside from that incident, they
14 would talk on the phone.  So, you know, it was at this
15 particular situation where she was at that point, Your
16 Honor, is what drove her to that.  She has no prior
17 issue, ***, Your Honor.
18              She's 48 years old, going to be 50.
19 She's -- I mean, since the Court released her on bond,
20 she has no violations, she hasn't done anything wrong
21 to come back to this Court to get any words as to
22 whether she -- as to whether she would be a threat to
23 the community or anything like that, Judge.  She's been
24 working since the time she got out.
25              We're asking if the Court would consider

1  to depart downward from the Guideline range due to the
2  fact that she's never been in prison and she's had some
3  credit time, about 11 days, Your Honor.  It was around
4  during the holidays when the arrest occurred.
5              That's what I would argue in regards to
6  sentencing, Your Honor.
7           THE COURT:  Thank you.
8              Ms. Fuentes, is there anything that you
9  wish to say?
10          DEFENDANT FUENTES:  Yes, ma'am.  I've been in
11 therapy for seven months already.  I know I made a
12 mistake.  I take full responsibility for my behavior.
13 Therapy has helped me to rectify my faults.  I regret
14 my mistake.  I was selfish.  I should have never let my
15 guard down.  Moving forward, I will rebuild my life
16 with a positive attitude -- in a positive direction,
17 I'm sorry.  And I apologize to you and to my family.
18          THE COURT:  Thank you.
19              Anything from the Government?
20          MS. GREENBAUM:  Yes, Your Honor.  The
21 Government does object to the request for a downward
22 departure.  We're asking for a Guideline range
23 sentence, particularly at the upper end, if the Court
24 would so consider.
25              This offense was actually discovered

1 after the U.S. Marshals and OIG were conducting an
2 investigation into suspected contraband that was being
3 brought into the facility. And so while they were
4 investigating that offense, they discovered this
5 offense.
6 And by nature of her position, we would
7 argue that there's a sort of power dynamic. She's the
8 cook supervisor, he's the inmate. She's got control of
9 this inmate and other inmates that were working in the
10 kitchen at that time.
11 And on the victim's account, this wasn't
12 just a one-time thing. He stated that she had actually
13 performed fellatio on him five additional times, in
14 addition to this one time.
15 And so the Government believes that this
16 is a very serious offense of nature. And it's serious
17 because the community trusts that when people are
18 serving their time or when they're being detained in a
19 facility like this, it's going to be done without
20 corruption or without abuse of power. And we argue
21 that that's exactly what she was doing here. She was
22 abusing her power when she engaged in this conduct with
23 the defendant. And that has an effect on the integrity
24 of this facility and it's wrong.
25 And for that reason we're asking for a

1  Guideline range sentence, upper end, Your Honor.  Thank
2  you.
3              THE COURT:  All right, thank you.
4              Ms. Fuentes, the Court does consider all
5  that has been presented here.  And I want to sort of
6  start off in a slightly different direction than, you
7  know, either attorney has touched on here.
8              And that is that we hear of these
9  situations on and off, sadly, where, you know, somebody
10 is detained and there is some sort of sexual abuse.
11 Often, it is a female detainee and a male abuser.  And
12 whenever we hear of that kind of situation, I think we
13 sort of always assume that there is some sort of
14 coercion, even if it's not physical coercion, but some
15 sort of coercion.  And I think in many of those cases
16 that there's little hesitation from courts, when those
17 come to the court, of imposing some time of
18 imprisonment.
19             I think in that regard, Ms. Fuentes, that
20 when it's a female that has engaged in the abuse and
21 it's a male victim, that sometimes our stereotyping
22 sort of blinds us, to begin with, to look at the
23 situation a little bit differently and to say, well,
24 because it's a female that was the person in a position
25 of authority, it wasn't abuse.  But we're learning more

1  and more, I think, as our country faces many of these
2  situations, that males, just as easily as females, can
3  be sexually abused; that males, just as easily as
4  females, can be abusers. [sic]
5              And so, Ms. Fuentes, I think it would be
6  easy for the Court to say, well, this really was not a
7  situation involving abuse; this really was a situation
8  where Ms. Fuentes was vulnerable at the time and, you
9  know, was in constant contact with this victim and then
10 they developed a relationship and, you know, we should
11 sort of look at it from the perspective of just an
12 inappropriate relationship as opposed to a criminal act.
13             I don't think that that is the right
14 approach here, Ms. Fuentes.  I think we have to keep in
15 mind that you were in a position of authority here.
16 Even if -- and again, I don't have specifics here.
17 But even if you didn't have the authority to say he
18 shouldn't work here any more, that nonetheless, you
19 were in a position of authority, the victim here was
20 vulnerable in the sense of being a ward.  I don't think
21 there's added vulnerability that would warrant the
22 additional points.  I've already ruled on that issue.
23             But in the sense of, you know, he is
24 detained, you know, he must follow the rules, he must
25 comply with the appropriate request -- and in this kind

1 of situation, perhaps on his part, there may have been
2 some motivation, you know, because I understand he
3 ended up with your phone or a phone from you that he
4 used to communicate with you. But there may have been
5 some motivation in that regard that that phone would
6 give him access to other individuals as well.
7 But, nonetheless, you know, this was
8 exactly what it is called by way of the name of the
9 offense, sexual abuse of a ward, Ms. Fuentes.
10 And so while I appreciate, you know, what
11 your attorney has pointed out about your situation at
12 the time, and I am glad, Ms. Fuentes, to hear that you
13 are dealing with sort of what led you to this
14 situation, the Court does believe that because of the
15 sort of corruptive nature of the offense, in that it is
16 a person in a position of authority with a ward who, by
17 definition, is under that person's authority, that a
18 term of imprisonment is necessary in this case both,
19 you know, as to you in particular for the offense here,
20 but also as an added deterrent here.
21 And the Court does have to keep in mind
22 that, sadly, we deal with these kind of corruption
23 issues. And I'm sort of using the term "corrupt" here,
24 and it may be a way that's a little bit different from
25 how it is ordinarily used. But I do think that when

1  somebody is in a position of authority and takes
2  advantage of that position for some self-gain, that
3  that is corruption.
4              And so in that regard, Ms. Fuentes, I
5  think we also need to send out a strong message here to
6  such individuals how that that kind of conduct is not
7  to be tolerated.
8              The Court is going to impose a term of
9  imprisonment here, Ms. Fuentes, of 12 months and one
10 day in custody.  That really effectively puts you very
11 close to the low end of the Guideline range because
12 that will authorize you to receive credit for good
13 conduct here.  But the Court does believe that
14 something other than just the low end of the Guideline
15 range is necessary here.
16             I am also imposing here a three-year term
17 of supervised release.  While you are under
18 supervision, you are not to commit another federal,
19 state, or local crime.  You are to comply with the
20 standard conditions adopted by the Court.
21 Additionally, you are not to possess a firearm,
22 ammunition, destructive device, or any other dangerous
23 weapon.
24             The Court finds that you do not have the
25 ability to pay the $250,000 fine and will waive that

```
 1  fine.
 2              The Court is also ordering that you
 3  register as a sex offender and provide the proper
 4  notifications in that regard.  All of these conditions
 5  are as set out in the Appendix of the Presentence
 6  Investigation Report.
 7              You do have the right to appeal.  If you
 8  wish to appeal, you need to advise your attorney.  That
 9  appeal needs to be filed within 14 days.  If you cannot
10  afford an appeal, you must file for in forma pauperis,
11  in which case the clerk will file your Notice of Appeal
12  and the Court will appoint appellate counsel.
13              One other matter for Ms. Fuentes, and
14  that is that, you know, she has been out on bond.  I am
15  inclined to order a surrender date that is a few months
16  down the road.  I don't know right now what the Bureau
17  of Prisons, what their sort of delay time is here.
18  Does the Government have any objection to that?
19         MS. GREENBAUM:  No, Your Honor.
20         THE COURT:  Okay.  And to one of the deputies,
21  do you have any idea how long the Bureau of Prisons is
22  taking to designate?
23         DEPUTY MARSHAL:  I do not, Judge, but I can
24  check on that.
25         THE COURT:  Okay, well, let me just go ahead.
```

1  I'm going to do this, Ms. Fuentes.  I'm going to allow
2  you to continue out on bond until you are ordered to
3  surrender to the Bureau of Prisons.  With the pandemic
4  still ongoing, I'll give you right now say at least
5  three months so that your surrender date would not be
6  any earlier than three months right now, okay?
7           But the way we'll work this is that you
8  will be designated by the Bureau of Prisons.  When you
9  receive that designation, you need to communicate with
10 your lawyer.  By the way, if it's earlier than three
11 months, I'll, you know, extend that surrender date.  I
12 can do that.  If it's later than three months, then I
13 will allow it to go forward.  Okay.  But hopefully --
14 and I think the Bureau of Prisons are doing a much
15 better job these days as far as containing the
16 pandemic.  But if there's any issue, at least it will
17 give you a little bit of time there.
18          DEFENDANT FUENTES:  Thank you.
19          THE COURT:  All right.  Anything else as to
20 Ms. Fuentes?
21          MS. GREENBAUM:  Your Honor, we just wanted to
22 note on the record that the victim was notified of this
23 hearing and elected not to attend this hearing.  And
24 it's my understanding that there no restitution.
25          THE COURT:  And we failed to address that

1  issue, but thank you for noting it, okay.
2              Then if there is nothing else, then you
3  may be excused.  Thank you.
4         MR. MORENO:  Thank you, Your Honor.  Have a
5  good day.
6         THE COURT:  All right, thank you.
7         *[10:35 a.m. - Proceedings adjourned]*
8
9                    C E R T I F I C A T I O N
10
11     I certify that the foregoing is a correct
12  transcript of the electronic sound recording of the
13  proceedings in the above-entitled matter.
14
15
16  /s/ Gwen Reed
17  12-29-20